UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :          No. 4:CR-05-0209-02
                                :
       vs.                      :
                                :
DONTE BROOKS                    :          (Judge Muir)


**ORDER**

June 30, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On January 26, 2006, Defendant Donte Brooks pled guilty to one count of conspiracy to possess with intent to distribute cocaine base (also known as crack cocaine) on May 18, 2005, in violation of 21 U.S.C. § 846. A document entitled "Statement of Facts in Support of Guilty Plea" was filed on January 26, 2006, in connection with the parties' plea agreement. Paragraph 23 of that document states the following: "The parties agree and stipulate that the amount of cocaine base, known as crack[,] involved in this case is more than 5 grams and less than 20 grams." (Statement of Facts in Support of Guilty Plea, p. 6, ¶23)

On April 19, 2006, U.S. Probation Officer Drew Thompson provided us with Brooks's pre-sentence report. Paragraph 17 of the presentence report states that "[t]he offense involves 42.92 grams of crack cocaine ...." (Presentence Report, p. 6, ¶17) Based on that drug quantity, Probation Officer Thompson

determined Brooks's Base Offense Level to be 30 and his advisory guideline imprisonment range to be 87 to 108 months.  Brooks has filed objections to the presentence report.

A presentence conference was held on April 24, 2006.  During the conference counsel and the court discussed, *inter alia*, 1) the inconsistent drug quantities set forth in the parties' stipulation and the presentence report, and 2) Brooks's objections to the presentence report.  With respect to the former matter, we specifically requested the parties to brief the issue of whether the Probation Officer is bound by a stipulation of the parties as to the existence of a certain fact.  On April 25, 2006, we issued an order in which we set briefing schedules on all of the subjects addressed at the presentence conference.

On May 16, 2006, the government filed its brief concerning the issue of whether the Probation Officer is bound by the parties' stipulation.  Brooks filed his responsive brief on May 25, 2006.  The time allowed for the government to file a reply brief expired on June 12, 2006, and to this date no such brief has been filed.  We withheld ruling on that matter pending briefing on Brooks's objections to the presentence report so that we could issue one order resolving all of the issues relating to Brooks's presentence report.

Brooks filed a brief in support of his objections to the

presentence report on May 16, 2006.  After being granted an
extension of time in which to do so, the government timely filed
its opposition brief on June 16, 2006.  Brooks filed his reply
brief on June 28, 2006.

The issue of whether the Probation Officer is bound by the
parties' stipulation concerning drug quantity and Brooks's
objections to the presentence report are ripe for disposition.
We will address all of those matters in this order.

The threshold question is whether the drug quantity to be
used in determining Brooks's Base Offense Level is the amount
agreed upon by the parties in their stipulation, or the amount
found by the Probation Officer in his report.  As discussed more
thoroughly below, an inherently related issue is whether Brooks
is entitled to any relief if we do not adopt the stipulation.  If
we apply the parties' stipulation, then Brooks's Base Offense
Level is 26.  The drug quantity reflected in the presentence
report yields a Base Offense Level of 30.

The United States Court of Appeals for the Third Circuit
considered a very similar factual scenario in the case of United
States v. Torres, 926 F.2d 321 (3d Cir. 1991).  In Torres the
parties stipulated that the defendant was responsible for 198
grams of cocaine.  However, an additional kilogram of cocaine had
been found in the automobile in which the defendant had been

riding when he was arrested.   During the guilty plea colloquy the
following exchange occurred:

> U.S. Attorney: [T]he amount [of] cocaine for the applicable
> sentencing guidelines range is 100 and, 100
> to 200 grams.
>
> The Court: The information alleges 198.
>
> U.S. Attorney: That's right.
>
> The Court: 198.  That binds it.
>
> U.S. Attorney: I anticipate that would be the amount for
> sentencing.

Id. at 325.  Despite the parties' stipulation, the Probation
Officer considered the additional kilogram of cocaine in
determining the defendant's guideline imprisonment range.  Both
parties objected to the court's consideration of the additional
kilogram.  The district court overruled the parties' objections,
denied the defendants' motion to withdraw his guilty plea because
the additional cocaine would be attributed to him for sentencing
purposes, and considered the additional kilogram in sentencing
the defendant.

     The Court of Appeals for the Third Circuit reversed the
district court holding that although the Probation Officer and
the court are not bound by a stipulation reached by the parties,
and that when the court rejects such a stipulation the defendant
may be entitled to withdraw his guilty plea.  In our view the
fundamental concept underlying Torres relates to a defendant's

4

entitlement to withdraw his guilty plea "when a plea bargain has
been frustrated for various reasons." Id. at 327.

The critical facts in <u>Torres</u> centered on the court's
representation during the guilty plea colloquy that the 198 grams
alleged in the information "binds it." Id.  The Court of Appeals
for the Third Circuit reasoned that the district court's
statement was not sufficiently clear to advise the defendant that
a greater drug quantity could subsequently be used to determine
the sentencing guidelines.

In the instant case, the government and Brooks agree that
the reasoning and holding in <u>Torres</u> apply here indicating that we
should either 1) apply the drug quantity to which the parties
have stipulated, or 2) if the stipulation is rejected in favor of
the greater drug quantity set forth in the presentence report,
provide Brooks with an opportunity to withdraw his guilty plea.

During the prosecution of this case a substitution of
government counsel occurred during plea negotiations with Brooks.
Although one Assistant United States Attorney initially handled
the matter, a second Assistant United States Attorney negotiated
with Brooks in the course of reaching a plea agreement.  The
negotiations conducted by the latter Assistant United States
Attorney appear to have been based on the amount of drugs set
forth in the parties' stipulation.  The parties negotiated in

good faith with that drug quantity in mind.  Although the
information relied upon by the Probation Officer to hold Brooks
responsible for the greater drug quantity was in the government's
file, that information was apparently not considered by the
government or discussed with Brooks when the stipulation and plea
agreement were reached.

We are of the view that those unique circumstances bring
this case within the category of cases controlled by Torres.  We
agree with the parties' jointly-held position that Brooks is
entitled to the benefits of the plea agreement he entered into
with the government because of the representations made to him by
the Assistant United States Attorney during their plea
negotiations.  When Brooks agreed to enter his guilty plea he had
every reason to believe that the quantity of drugs to be
considered for sentencing purposes would be more than 5 grams and
less than 200 grams of cocaine base.  If the greater drug
quantity were to be considered, Torres would require us to
provide Brooks with an opportunity to withdraw his guilty plea.

For those reasons, we will proceed on the basis that the
quantity of crack attributable to Brooks is more than 5 grams and
less than 20 grams.  In light of the adjustments presented by
Probation Officer Thompson in the presentence report, at this
point Brooks's Base Offense Level is 26, his Total Offense Level

is 25, and his advisory guideline imprisonment range is 57 to 71 months.

The specific adjustments in the presentence report include 1) an increase of two levels pursuant to U.S.S.G. § 2D1.1(b)(1) for the recovery of a firearm registered to Brooks when he was arrested with the crack cocaine, and 2) a decrease of three levels pursuant to U.S.S.G. § 3E1.1(b) for acceptance of responsibility.  With those calculations as our baseline, we next consider Brooks's objections to his presentence report.  Before discussing the merits of those objections, we will set forth the undisputed facts.

Brooks and his co-defendant Robinson are cousins.  Brooks admits having committed the instant offense.  He joined the conspiracy because Robinson offered to help Brooks with Brooks's financial difficulties.  Brooks went on four trips from Philadelphia to Williamsport for the purpose of transporting drugs.  Brooks earned no more than $2,000 for his role in the offense.

On May 16, 2005, Brooks and Robinson transported a quantity of cocaine base from Philadelphia, Pennsylvania, to Williamsport, Pennsylvania.  On May 17, 2005, Robinson sold .32 grams of cocaine base to a confidential informant at 700 Hepburn Street, Williamsport, Pennsylvania (hereinafter "700 Hepburn Street").

On May 18, 2005, Robinson sold .70 grams of cocaine base to a confidential informant at 700 Hepburn Street.

On May 18, 2005, police officers executed a search warrant at 700 Hepburn Street.  When the police entered that residence, Robinson was sitting on the bed in the bedroom of the residence. Alongside the bed next to Robinson was a pair of jeans.  In the pockets of those jeans were 1) $100 in prerecorded money used by the confidential informant to make the controlled buy of cocaine base on May 18, 2005, and 2) 12.7 grams of cocaine base.  The cocaine base in the jeans was in a clear package containing numerous smaller individual packets for distribution.

When the police executed the warrant, Brooks was found standing in a bathroom behind a door.  In the ceiling of that bathroom police found $704 in United States currency and 5.6 grams of cocaine base.  The cocaine base was packaged in a number of small clear plastic bags contained within one larger clear plastic bag.

Among the other items recovered from 700 Hepburn Street were a Charter 2000 .38 caliber special revolver bearing serial number 14880, which was loaded with five rounds of .38 special ammunition; and a silver colored .22 caliber revolver Model RG 23 bearing serial number 263301 and loaded with six rounds of .22 caliber ammunition.  The former weapon was registered to Brooks.

8

Brooks had purchased the gun in Philadelphia.

Those are the facts to apply in considering Brooks's objections to his presentence report.  His first objection is that the report fails to reflect "a reduction in his offense level for his mitigating role in the offense pursuant to U.S.S.G. § 3B1.2." (Brief in Support of Objections, p. 5)  Brooks supports this objection by arguing that

> [i]n this case, Donte Brooks's cousin, Darien Robinson[,] and his cousin's father, Charles Robinson, were already heavily involved in a drug distribution business in Williamsport.  Because Donte Brooks needed money to move, he briefly worked for Darien Robinson.  Donte Brooks made a total of four trips.  ...  Brooks also on occasion assisted Robinson package the drugs and service[] Robinson's customers for him.  In connection with the four trips, Brooks was in Williamsport for a total of slightly more than two weeks.  In fact, this is the only period in his entire life that Brooks had been in Williamsport and he has no intention ever of returning.  Donte Brooks was plainly the least culpable of those involved in the drug distribution and clearly is less culpable than Darien and Charles Robinson.

(Brief in Support of Objections, pp. 6-7)

In order to understand Brooks's role in the offense, one has to place that role in context by understanding the specific "offense" at issue.  The superseding information to which Brooks has pled guilty charges him with one count of conspiracy to possess with the intent to distribute cocaine base.  The "Manner and Means" portion of the superceding information states that "[o]n or about the 18th day of May, 2005, in Williamsport, PA,

DONTE BROOKS, possessed crack with the intent to distribute same." (Superseding Information, p. 2)

Brooks's argument would be more persuasive if the "offense" encompassed large quantities of drugs distributed over a lengthy period of time in numerous transactions.  However, this case does not involve such an offense.  The "offense" set forth in the superseding information is limited to a single day, May 18, 2005.

On that date Brooks was arrested in a residence with, *inter alia*, Robinson, a quantity of cocaine base packaged for distribution, large amounts of cash (including the prerecorded bills used for a controlled purchase of drugs), and weapons. Based strictly on his admissions concerning his involvement, Brooks's role in that offense is, as stated by the Probation Officer, commensurate with that of his co-defendant Robinson.  We will overrule Brooks's first objection to the presentence report.

Brooks's next objection is that he should not receive a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1).  The cited guideline provides that a defendant's Base Offense Level should be increased two levels "[i]f a dangerous weapon (including a firearm) was possessed, ...." Id.  Application note 3 in the "Commentary" section to that guideline further explains that

> [t]he enhancement for weapon possession reflects the
> increased danger of violence when drug traffickers possess

10

weapons.  The adjustment should be applied if the weapon was
present, unless it is clearly improbable that the weapon was
connected with the offense.  For example, the enhancement
would not be applied if the defendant, arrested at his
residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, Application Note 3.

The government bears the burden of proof to establish that

the enhancement set forth in U.S.S.G. § 2D1.1(b)(1) applies. *See*

United States v. Goggins, 99 F.3d 116, 119 (3d Cir. 1996)(noting

that "the burden of proof to impose an enhancement under section

2D1.1(b)(1) is less than the burden for a conviction under

section 924(c)(1)"); Davenport v. United States, 2005 WL 2148567,

*4 (D. Del. September 7, 2005)(commenting that the government

"had carried its burden of proof and [the court] imposed the two

level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)").  While

Brooks concedes that he possessed the gun, he contends that the

government has failed to establish a sufficient nexus between the

gun and the drug offense.

Brooks cites the case of <u>United States v. Pitts</u>, 3 F. Supp.

2d 637 (E.D. Pa. 1998)(Brody, J.), in support of his position.

In that case the defendant was arrested immediately after an

individual under surveillance purchased drugs from the defendant.

The car which the defendant had been driving, and in which the

drug transaction had occurred, was seized and later searched.

The defendant did not own the automobile.  A handgun, which was

in no way linked to the defendant, was found under the carpet of the driver's area in the car.  The defendant's only connection to the gun was that he lived in a house with the gun's owner.  The court in <u>Pitts</u> stated that "[t]he instant case turns on the threshold issue of possession." Id. at 640.

Those facts and analysis in <u>Pitts</u> are drastically different from the circumstances of Brooks's situation.  First and foremost, Brooks admits that he possessed the gun. (Brief in Support of Objections, p. 8)("Donte Brooks concedes he possessed a firearm ....")

Brooks contends that no link between the weapon and the drug offense exists because of the following factors: 1) he purchased the weapon four years before the instant offense; 2) he legally owned the firearm; 3) he lived in a dangerous section of Philadelphia and purchased it "solely for his own protection" (Brief in Support of Objections, p. 8); and 4) he did not want to leave the firearm at his mother's residence while he was in Williamsport.  For the purposes of this order, we will accept all of those representations as true.  However, they collectively fail to disconnect the weapon from Brooks's instant offense.

The handgun in question is registered to Brooks and it was found in a bedroom occupied by Robinson.  Both Robinson and Brooks possessed cocaine base when they were arrested.  A second

weapon was also found in the residence, and both of the weapons were loaded.

The critical factors in our view are that the weapon registered to Brooks was easily accessible to the co-defendants, an additional weapon was found, and both weapons were loaded. Brooks's representation that he purchased the weapon "solely for his own protection" is entirely consistent with the conclusion that the protection (in the form of the gun) was necessary when trafficking in drugs.  Brooks surely did not need to be protected from a dangerous Philadelphia neighborhood while residing at 700 Hepburn Street.

The totality of the undisputed facts establish a sufficient nexus between the weapon at issue and the offense to apply the enhancement set forth in U.S.S.G. § 2D1.1.  We will overrule his second objection to the presentence report.

Brooks's next objection is that the presentence report fails to provide for "a two level decrease in his offense level because he meets the criteria set forth in U.S.S.G. § 5C1.2, known as the safety valve." (Brief in Support of Objections, p. 9)  The safety valve provisions authorize a court to depart downwards when the following five criteria are met:

> 1.  the defendant does not have more than 1 criminal history point;
> 2.  the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon

in connection with the offense;
3.  the offense did not result in death or serious bodily
injury to any person;
4.  the defendant was not an organizer, leader, manager, or
supervisor of others in the offense, and;
5.  the defendant has provided truthful information
concerning the offense conduct.

U.S.S.G. § 5C1.2, 18 U.S.C. § 3553(f).  The only element in

contention here relates to whether Brooks "possess[ed] a firearm

... in connection with the offense."

Under these circumstances, the burden of proof is on Brooks

"to establish [by a preponderance of the evidence] that he ...

did not possess a firearm in connection with the offense." United

States v. Wilson, 106 F.3d 1140 (3d Cir. 1997); United States v.

Herrera, ___ F.3d ___, 2006 WL 1174141, *4 n.5 (2d Cir. May 2,

2006)("for purposes of [the safety valve] we look to the

defendant's own conduct in determining whether the defendant has

established by a preponderance of the evidence that the weapon

was not possessed in connection with the offense")(quoting United

States v. Zavalza-Rodriguez, 379 F.3d 1182, 1188 (10th Cir.

2004)).

Brooks relies on the same arguments here that he made in

connection with the two-level enhancement discussed above for

possession of the weapon.  In addition, Brooks contends that our

disposition of his downward departure motion is controlled by the

case of United States v. Hernandez, 187 F.3d 806 (8th Cir. 1999),

14

in which the United States Court of Appeals for the Eighth Circuit held that a defendant was entitled to the safety valve provisions although he had possessed a shotgun in the cab of his truck while hauling marijuana in the trailer.

We decline Brooks's invitation to follow the holding of United States v. Hernandez, 187 F.3d 806 (8th Cir. 1999), for two reasons.  First and foremost both the district court and court of appeals proceeded in that case under the false impression that the government bore the burden of proof with respect to establishing the prerequisites of the safety valve provisions.[1] In addition, when compared with the circumstances in Hernandez, the weapon at issue in this case was  possessed by Brooks in much closer proximity to the cocaine being distributed.  That circumstance appears to have been significant in the courts' analysis in Hernandez.

Based on the totality of the circumstances presented to us,

---

[1]See Hernandez, 187 F.3d at 808 ("Proving that a defendant should receive a two-level enhancement for possession of a weapon in connection with a drug trafficking offense requires the government to show by a preponderance of the evidence that the defendant possessed a dangerous weapon and that it was not clearly improbable that the weapon had a connection to the criminal activity. See United States v. Rogers, 150 F.3d 851, 857 (8th Cir.1998), cert. denied,525 U.S. 1113, 119 S.Ct. 888, 142 L.Ed.2d 787 (1999). The government must make a similar showing in order to defeat a defendant's claim of entitlement to the safety valve provision. See United States v. Burke, 91 F.3d 1052, 1053 (8th Cir.1996).")(Emphasis added).

Brooks has failed to establish by a preponderance of the evidence that he did not possess the handgun in connection with the drug offense.  The facts of record do not qualify Brooks for the benefits of the safety valve provisions.  We will overrule Brooks's third objection to the presentence report.

Brooks's fourth and final objection is that his "offense level overstates the seriousness of the offense[,] warranting a downward departure." (Brief in Support of Objections, p. 13) Brooks contends that "[a] downward departure is warranted to an offense level which takes into consideration the amount of drugs the parties agreed was involved in this case, Brooks's mitigating role in the offense and his legal possession of a firearm for his protection." (Id., p. 14)

This so-called "objection" is more accurately described as a combination of Brooks's other arguments for downward adjustments, which we have already addressed.  By setting Brooks's Base Offense Level to 26 to reflect the parties' stipulation, we have provided Brooks with all of the relief to which he is entitled. His other contentions have no merit, regardless of whether they are framed as requests for adjustments or a motion for downward departure.  Brooks's final objection is overruled.  To the extent that his final argument is considered to be a motion for a downward departure, the motion is denied.

16

To summarize, other than the Base Offense Level, all of Probation Officer Thompson's findings and determinations set forth in the presentence report are adopted.  Brooks's Total Offense Level is 25, and his advisory Guideline Imprisonment Range is 57 to 71 months.

NOW, THEREFORE, IT IS ORDERED THAT:

1.   Brooks's objections to the presentence report are overruled.

2.   Brooks's Total Offense Level is 25, and his advisory Guideline Imprisonment Range is 57 to 71 months.


                              s/Malcolm Muir
                              MUIR, U.S. District Judge

MM:ga

17